IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

YURIDIA ROCHA-JAMARILLO,      :
                                :
         Plaintiff,         :
                                :
      v.                      :      CASE NO: 7:22-CV-75 (WLS)
FRANCISCO MADRIGAL, *et al.*      :
                                :
         Defendants.      :
_____

## ORDER

Before the Court are five Motions to Dismiss filed by (1) the Official Capacity Federal Defendants (Doc. 100); (2) Defendants Irwin County Detention Center and LaSalle Southeast, LLC (Doc. 84); (3) Defendant Warden David Paulk (Doc. 85); (4) Defendant Dr. Mahendra Amin (Doc. 86); and (5) Defendant Hospital Authority of Irwin County (Doc. 83). For the reasons discussed below, the moving Defendants' Motions are **GRANTED-IN-PART**, **DENIED-IN-PART**, and **DENIED-AS-MOOT-IN-PART**. As a result, the only claims that remain in the action are Plaintiff's Federal Tort Claims Act claims against the United States of America.

## I.   PROCEDURAL & FACTUAL BACKGROUND

### A.   Procedural Background

On July 28, 2022, Plaintiff Yuridia Rocha-Jamarillo ("Plaintiff") filed the above-captioned action. (Doc. 1). The operative Complaint, the Second Amended Complaint ("SAC") (Doc. 80) was filed on March 8, 2022. In the SAC, Plaintiff asserts twenty causes of action against various Defendants. (*See* Doc. 80 ¶¶ 183–433). The SAC alleges that that Defendants violated her First and Fifth Amendment rights, the Administrative Procedure Act ("APA"), and the Immigration and Nationality Act ("INA"). (*Id.* ¶¶ 183–289). Plaintiff also alleges a number of Federal Tort Claims Act ("FTCA") and Georgia state law torts. (*Id.* ¶¶ 290–433).

### B.    Factual Background

### 1.    Plaintiff

The SAC is brought on behalf of Yuridia Rocha-Jamarillo[1] who, while in civil immigration detention at Irwin County Detention Center ("ICDC"), was subjected to medical and other abuse, most notably, unnecessary gynecological procedures that were performed without consent by or at the direction of Defendant Doctor Mahendra Amin ("Defendant Dr. Amin") (*See generally* Doc. 80).[2]  The allegations in the SAC are highly similar to, and at times duplicative of, the allegations in another action before this Court, *Oldaker v. Giles et. al.*, No. 7:20-cv-224, (M.D. Ga.) [hereinafter "*Oldaker*"] which brings a putative class action on behalf of sixteen women who were allegedly subjected to similar treatment while detained at ICDC.[3]

Plaintiff was detained at ICDC in July and August of 2020. (Doc. 80 ¶ 53).[4] At ICDC, Plaintiff complained of pain and swelling under her rib, and, on July 22, 2020, she was transported in handcuffs to see Defendant Dr. Amin. (*See* Doc. 80 ¶¶ 56–57). When Plaintiff, who speaks no English, arrived at Defendant Dr. Amin's office, she was told, through a translator, that he would perform a sonogram on her. (*Id.* ¶ 58). Defendant Dr. Amin then performed a painful transvaginal ultrasound, "without her consent."[5] (*Id.* ¶ 59). After the ultrasound, Defendant Dr. Amin informed Plaintiff that she had a cyst on her uterus, and that she should follow up in two weeks for further evaluation. (*Id.* ¶ 60). Plaintiff was then given a "Depo Provera" injection. (*Id.* ¶ 61).

---

[1] Plaintiff was originally identified as "Yuridia Jamarillo-Rocha." However, Plaintiff's counsel, filed a Motion to Amend/Correct the caption to reflect Plaintiff's actual name, "Yuridia Rocha-Jamarillo," more than one year after the action was filed (Doc. 111), which the Court granted. (Doc. 113).

[2] The facts contained herein, consistent with the standard of review for motions to dismiss, are derived from the SAC, Plaintiff's operative Complaint, accepted as true, and construed in the light most favorable to Plaintiff. *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

[3] The Court notes that much of the SAC appears to be imprecisely transcribed directly from the *Oldaker* Second Amended Complaint. As a result, much of the SAC concerns allegations which are only tangentially relevant to the causes of action asserted by Plaintiff, frequently alleges claims on behalf of the classes in the *Oldaker* case, and is replete with confusing typographical errors.

[4] It is unclear from the SAC what dates, exactly, Plaintiff was detained at ICDC, because the SAC also indicates Plaintiff was detained at ICDC from May 23, 2020 until August 30, 2020.

[5] The Court need not accept this legal conclusion as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) and does not find it so as a matter of law but includes it for background, because Plaintiff has failed to provide more specific factual allegations.

About a month later, on August 20, 2020, Plaintiff was taken back to Defendant Dr. Amin's office for a follow up appointment. (Doc. 80 ¶ 63). He then performed another painful transvaginal ultrasound, "without her consent." (Doc. 80 ¶ 63). Plaintiff was then informed that she would receive a surgery "to remove the cyst and infection." (*Id.* ¶ 64). Seven days later, however, "[o]n August 28, 2020 without the consent of [Plaintiff], Dr. Amin performed a dilation and curettage, and operative laparoscopy on [Plaintiff] at Irwin County Hospital that was not medically indicated." (*Id.* ¶ 65). When Plaintiff regained consciousness after the procedure, she found three stitches on her lower abdomen, and a patch of skin missing to the right of her vagina. (*Id.* ¶¶ 67). Plaintiff was then transported back to ICDC. (*Id.* ¶ 68). At some point after this, Plaintiff was removed from the United States, although the SAC does not specify when. (*See Id.* ¶ 69).

### 2. Defendants' Involvement

### a. Irwin County Hospital

When detainees at ICDC required outside gynecological care, they were frequently referred to Defendant Hospital Authority of Irwin County ("Defendant Irwin County Hospital"), (*see generally* Doc. 80 ¶¶ 53–69), which is a general medical and surgical facility near ICDC. (*Id.* ¶ 35). Defendant Dr. Amin is a physician affiliated with Defendant Irwin County Hospital, who provided medical services to detainees who were referred from ICDC. (*Id.* ¶ 36). As noted, Plaintiff's allegations flow from alleged improper provision of medical treatment directly by Defendant Dr. Amin. (*See generally id.* ¶¶ 53–69). Plaintiff also alleges that Defendant Irwin County Hospital had policies in place which required certain tests to be run on patients regardless of that patient's individual need. Particularly relevant here, such policy allowed Defendant Dr. Amin to perform ultrasounds which he and Irwin County Hospital "kn[ew] or should [have] know[n] [were] not medically necessary." (*Id.* ¶ 79).

### b. Irwin County Detention Center Defendants

In 2007, Irwin County, Georgia, entered into an Intergovernmental Agreement ("IGA") with the United States Marshals Service ("USMS") allowing the USMS, Federal Bureau of Prisons of the Department of Justice, and the United States Immigration and Customs Enforcement ("ICE") of the Department of Homeland Security to house federal detainees at ICDC. (Doc. 80 ¶ 147). ICDC is a detention center located in Ocilla, Georgia.

(*Id.* ¶ 33). Under the IGA, Irwin County would administer the daily operation of ICDC in exchange for a per-detainee daily payment. (*Id.* ¶ 148). Irwin County, in turn, contracted with Defendant LaSalle Southeast, LLC ("Defendant LaSalle"), which is a private for-profit company to operate ICDC. (*Id.* ¶ 157).

Plaintiff alleges that ICDC and its employees were aware of Defendant Dr. Amin's improper treatment, yet, despite this knowledge, continued to send patients to him. (Doc. 80 ¶¶ 147). According to Plaintiff, the ICDC Defendants' knowledge of Defendant Dr. Amin's improper treatment flowed from three sources. First, multiple women who were detained at ICDC complained, verbally and in writing, to ICDC officers about Defendant Dr. Amin's care. (*Id.* ¶ 74). Second, ICDC officers often accompanied detained women to their appointments with Defendant Dr. Amin and witnessed both that he did not obtain informed consent for the procedures, and that the women experienced severe pain. (*Id.* ¶ 77). Third, the ICDC Defendants were aware that the Department of Justice had investigated Defendant Dr. Amin for similar unnecessary procedures from 2013–2015. (*Id.* ¶ 78).

Plaintiff also alleges that the ICDC Defendants retaliated against Plaintiff, and other women at ICDC, for complaining about Defendant Dr. Amin's improper medical treatment. (Doc. 80 ¶ 129–42). These retaliatory actions included, *inter alia*, placing women who complained in solitary confinement, transferring them to other units, physically assaulting them, threatening to withhold food and water, delaying delivery of prescribed medications, limiting or denying them phone and law library access, monitoring their phone calls and ending those calls abruptly when they discussed matters related to Defendant Dr. Amin's improper treatment or retaliation, and destroying letters documenting treatment. (*Id.* ¶ 130).

### c.    **Federal Defendants**

The IGA required Irwin County to administer ICDC in accordance with ICE standards and allow ICE to inspect the facility to assess compliance with these standards. (Doc. 80 ¶¶ 151). While Irwin County was responsible for providing medical care to ICE detainees within ICDC, all outside non-emergency referrals required ICE approval, which included those made to Defendant Dr. Amin. (*Id.* ¶¶ 152–53).

Plaintiff alleges that the Federal Defendants were aware of the detained women's complaints about Defendant Dr. Amin's medical care, and the 2013–2015 investigation into

him. (Doc. 80 ¶¶ 78–91). Despite this, those Defendants continued to allow ICDC to send patients to Defendant Dr. Amin. (*Id.* ¶ 94). Additionally, Dawn Wooten, a nurse at ICDC submitted a whistleblower complaint about Defendant Dr. Amin to Thomas Giles, the director of the ICE Atlanta field office at the time, on September 14, 2020. (*Id.* ¶ 86) Even after this complaint became public, some of the detained women were still sent to be treated by Defendant Dr. Amin. (*Id.* ¶ 87). Plaintiff also alleges that ICE employees, alongside ICDC employees, retaliated against women who complained about Defendant Dr. Amin, and that the Federal Defendants generally conspired to expedite removal orders to prevent these women from participating in lawsuits and investigations. (*Id.* ¶¶ 114–120).

## II.  INSUFFICIENT SERVICE OF PROCESS

Before addressing Defendants' motions to dismiss, the Court will address service of process, as a number of Defendants remain unserved. On December 20, 2022, the Court entered an Order (Doc. 62) for Plaintiff to file evidence of returned summonses executed or waived, and/or show cause no later than Friday, December 30, 2022, why the SAC should not be dismissed as to any unserved Defendants. Plaintiff was noticed that failure to comply with that Order would subject the case to dismissal as to any unserved Defendant, without further notice or proceeding.

The Order identified the following Defendants as unserved: Marteka George, in her individual and official capacities; Mia Mines, in her individual and official capacities; William Rabiou, in his individual and official capacities; United States Immigration and Customs Enforcement; Tae Johnson, in his individual and official capacities; Alejandro Mayorkas, in his official capacity; Francisco Madrigal, in his official capacity; Patrick Musante, in his individual and official capacities; Cesar Ciprian, in his individual and official capacities; Merrick Garland, in his official capacity, Ada Rivera, in her individual and official capacities; Thomas P. Giles, in his individual capacity; "FNU Hughes," in her individual and official capacities; "FNU Smith," in her individual and official capacities; "FNU Coney," in her individual and official capacities; "FNU Hanes," in his individual and official capacities, "FNU Faison," in her individual and official capacities; "FNU Battle," in her individual and official capacities; "FNU Vaughn," in her individual and official capacities, "FNU Scott," in her individual and

official capacities; "FNU Slack" in her individual and official capacities; "Unknown ICDC Officers ##1-X," in their individual and official capacities; and "Unknown ICE Officials ##1-X," in their individual and official capacities." (Doc. 62).

In response to the Court's Order to show cause, on December 22, 2022, Plaintiff submitted proof of service for the following Defendants: Francisco Madrigal, in his official capacity; Thomas P. Giles, in his individual capacity; Tae Johnson, in his official capacity; Alejandro Mayorkas, in his official capacity; Merrick Garland, in his official capacity, Immigrations and Customs Enforcement; Patrick Musante, in his individual and official capacities; Cesar Ciprian, in his individual and official capacities; and Ada Rivera, in her individual and official capacities. (Doc. 64). However, Plaintiff neither provided proof of service as to any other Defendants nor showed cause why those Defendants should not be dismissed.

Under Federal Rule of Civil Procedure 4(m), "if a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." The action was filed on August 7, 2022. Now, more than eighteen months later, Plaintiff has failed to perfect service as required by Rule 4(m) on most of the Defendants identified in the Court's December 20, 2022, Order (Doc. 62), and was noticed in that Order that failure to perfect service on those Defendants might result in dismissal of the action as to those unserved Defendants.

Accordingly, the following Defendants, are **DISMISSED-WITHOUT-PREJUDICE** from the action for Plaintiff's failure to perfect service or show cause why they should not be dismissed: Mia Mines, in her official capacity, William Rabiou, in his official capacity, Marteka George, in her individual and official capacities; "FNU Hughes," in her individual and official capacities; "FNU Smith," in her individual and official capacities; "FNU Coney," in her individual and official capacities; "FNU Hanes," in his individual and official capacities; "FNU Faison," in her individual and official capacities; "FNU Battle," in her individual and official capacities; "FNU Vaughn," in her individual and official capacities; "FNU Scott," in her individual and official capacities; "FNU Slack," in her individual and

official capacities; "Unknown ICDC Officers ##1-X," in their individual and official capacities; and "Unknown ICE Officials ##1-X," in their individual and official capacities.[6]

## III. OFFICIAL CAPACITY FEDERAL DEFENDANTS' MOTION TO DISMISS

### A. Procedural Background

On September 15, 2023, the Official Capacity Federal Defendants filed a Motion to Dismiss (Doc. 100). Plaintiff filed a Response (Doc. 110) on November 2, 2023. And the Official Capacity Federal Defendants filed their Reply (Doc. 112) on November 16, 2023. All of the Parties' respective briefs have been submitted and the Official Capacity Federal Defendants' Motion is ripe for ruling

The SAC asserts claims against two entity federal Defendants: the United States of America ("United States") and Immigration and Customs Enforcement ("ICE"). (Doc. 80 ¶¶ 7, 9, & 54). The SAC also identifies the following federal employees in their official capacities as defendants: Francisco Madrigal, as the Director of the ICE Atlanta Field Office; Patrick Lechleitner, in his capacity as Director of ICE;[7] Alejandro Mayorkas, in his capacity as Secretary of the Department of Homeland Security ("DHS"); Merrick Garland, in his capacity as the Attorney General of the United States; Patrick Musante, in his capacity as Assistant Field Office Director and Chief of Staff of the ICE Atlanta Field Office; Cesar Ciprian, in his official capacity as a Supervisory Detention and Deportation Officer at the ICE Atlanta Field Office; and Ada Rivera, in her official capacity as the medical director of the ICE Health Service Corps. (*Id.* ¶¶ 7–18). Hereinafter, these entities and individuals will be referred to as the "Official Capacity Federal Defendants."[8]

Plaintiff asserts the following four claims against all Official Capacity Federal Defendants:

---

[6] The Court notes that Plaintiff voluntarily dismissed all claims against federal defendants in their individual capacities. This included: Defendants Thomas Giles, Patrick Musante, Cesar Ciprian, Ada Rivera, Walkiria Mines, and Djibril "William" Rabiou. (Doc. 104).

[7] The Complaint names Tae Johnson, in his official capacity as Director of ICE. However, by operation of Fed. R. Civ. P. Rule 25(d), Patrick Lechleitner, as the successor to Tae Johnson's office, was automatically substituted for Tae Johnson as a party to the action.

[8] Plaintiff also asserted a number of claims against federal defendants in their individual capacities. (*See* Doc. 80 ¶¶ 7–18). However, as noted, Plaintiff voluntarily dismissed these claims. (Doc. 104).

Count 2 alleges a violation of Plaintiff's Fifth Amendment Due Process Clause rights for imposing punitive conditions of confinement on civil detainees and deliberate indifference to serious medical need, seeking declaratory and injunctive relief against the Official Capacity Federal Defendants. (Doc. 81 ¶¶ 204–16);

Count 5 alleges a violation of the Administrative Procedure Act ("APA") and the Immigration and Nationality Act ("INA") for deporting witnesses who are seeking to protect their civil rights or liberties, seeking declaratory and injunctive relief against the Official Capacity Federal Defendants. (*Id.* ¶¶ 255–66);

Count 6 alleges a violation of the APA, for failure to follow the Performance Based National Detention Standards ("PBNDS") (*Id.* ¶¶ 267–80); and

Count 7 alleges a violation of Plaintiff's Fifth Amendment Due Process rights for deportation of an essential witness. (*Id.* ¶¶ 281–89). [9]

Plaintiff also alleges the following five claims against the United States of America: (Doc. 80 ¶¶ 370–429):

Count 15 alleges a Negligence, Gross Negligence, and Recklessness claim under the Federal Tort Claims Act ("FTCA") seeking damages. (Doc. 80 ¶¶ 370–86).

Count 16, alleges a Negligence *per se* claim under the FTCA, seeking damages. (*Id.* ¶¶ 387–98).

Count 17, alleges a Negligent Supervision claim under the FTCA, seeking damages. (*Id.* ¶¶ 399–409).

Count 18, alleges an Intentional Infliction of Emotional Distress claim under the FTCA, seeking damages. (*Id.* ¶¶ 410–418); and

Count 19, alleges a Negligent Infliction of Emotional Distress claim under the FTCA, seeking damages. (*Id.* ¶¶ 419–429).

**B.    Standard of Review**

Defendants move to dismiss Plaintiff's claims under Rule 12(b)(1) of the Federal Rules of Civil Procedure, which allows a party to move the Court to dismiss a claim because the Court lacks subject matter jurisdiction over that claim. A district court should grant a motion to dismiss for lack of subject matter jurisdiction "only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

---

[9] The Court notes that many of the SAC's count numbers are misspelled or mislabeled. However, the Court construes the SAC as numbering its counts ordinally and consecutively; starting with Count 1, Plaintiff's First Amendment claim under Section 1983, and ending with Count 20, Plaintiff's claim for attorneys' fees. The Court will refer to the SAC's counts accordingly.

Attacks on subject matter jurisdiction may be "facial" or "factual." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). A facial attack is based solely on the allegations in the complaint, which are taken as true for the purposes of the motion to dismiss. *Id.* A factual attack challenges the existence of subject matter jurisdiction in fact, and a court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* Here, the Official Capacity Federal Defendants rely on a Declaration (Doc. 100-1) in support of their Motion to Dismiss and, therefore, make a factual attack under Rule 12(b)(1).

### C.    FTCA CLAIMS

The Official Capacity Federal Defendants move to dismiss Plaintiff's FTCA claims for lack of subject matter jurisdiction, at Counts 15–19. (Doc. 100 at 14–22). Plaintiff brings five FTCA claims: Negligence, Gross Negligence, and Recklessness; Negligence *per se*; Negligent Supervision; Intentional Infliction of Emotional Distress; and Negligent Infliction of Emotional Distress. (Doc. 80 ¶¶ 370–429). The gravamen of these claims is that the Official Capacity Federal Defendants breached a duty of care to Plaintiff by allowing her to suffer the medical abuses of Defendant Dr. Amin and either intentionally or recklessly caused her to continue to be sent to him after having knowledge of the abuses. (*Id.*)

Generally, the Federal Government and its agencies are immune from suit. *JBP Acquisitions, L.P. v. United States ex rel. F.D.I.C.*, 224 F.3d 1260, 1263 (11th Cir. 2000) (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994)). The FTCA, however, provides a limited exception to this waiver in cases when "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office of employment." 28 U.S.C. § 1346(b). Where the FTCA applies, the United States may be liable for certain torts "in the same manner and to the same extent as a private individual under like circumstances." *JBP Acquisitions*, 224 F.3d at 1263.

### 1.    Lack of Specific Allegations

The Official Capacity Federal Defendants contend that Plaintiff's FTCA claims fail to sufficiently plead particular acts of wrongdoing by the Official Capacity Federal Defendants, and, therefore, cannot establish the FTCA sovereign immunity waiver, or meet the pleading standards of *Twombly*. (Doc. 100 at 16). However, the Official Capacity Federal Defendants point to no case law which requires increased specificity for a waiver of the FTCA, and,

without such authority, the Court is skeptical that the FTCA sovereign immunity waiver imposes a higher pleading standard than that which would be generally required of a pleading in federal court. And the Court finds that the SAC, at least with respect to the FTCA claims, pleads facts with sufficient specificity to state a plausible claim for relief against the Official Capacity Federal Defendants. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Although the FTCA allegations do not allege specific acts or omissions by specific federal employees, it identifies specific legal obligations which federal employees had to Plaintiff, and specific facts which caused them to breach those duties, all of which plausibly suggest that the referenced tort was committed against Plaintiff by a federal employee. (*See e.g.,* Doc. 80 ¶ 394) ("ICE employees and/or agents breached their duty by failing to ensure adequate and appropriate medical care, despite sufficient notice of ongoing unconsented to and unnecessary gynecological surgeries at ICDC and by failing to address repeated reports of inadequate medical care"); (*Id.* ¶ 393) ("by prescribing base standards for medical care, the PBNDS seeks to rectify harms or injuries to detained noncitizens resulting from medical negligence or malpractice. Thus, the harm sustained by Plaintiffs [sic]—the physical, emotional, and psychological harm of being subjected to medical abuse—is the exact harm the PBNDS seek to guard against"); (*Id.* ¶ 414) ("Despite knowing that Defendant Amin was subjecting women to unnecessary and physically abusive procedures, ICE employees and/or agents continued to approve referrals to Defendant Amin"). As a result, the Court finds the Official Capacity Federal Defendants' argument that Plaintiff fails to plead her claim with enough specificity to establish the FTCA sovereign immunity waiver, unpersuasive.[10]

## 2.    Independent Contractor Exception

The Official Capacity Federal Defendants contend that the FTCA waiver of subject matter jurisdiction does not apply because Defendant Dr. Amin was not a federal employee. (Doc. 100 at 13–17). Although the Court agrees that the FTCA does not waive sovereign immunity for actions committed by an independent contractor who was not a federal

---

[10] The Court notes that the Official Capacity Federal Defendants appear to combine elements of a Rule 12(b)(1) motion with a 12(b)(6) motion, without invoking Rule 12(b)(6) as a ground for dismissal. Because the Official Capacity Federal Defendants have not moved under Rule 12(b)(6), the Court's finding is with respect only to Rule 12(b)(1) and should not be construed as making any finding regarding the motion as made under Rule 12(b)(6).

employee, *see e.g.*, *Gifts v. United States*, 176 F.3d 1376, 1379 (11th Cir. 1999), it would seriously misconstrue the SAC to suggest that Plaintiff is pursuing FTCA liability against the United States based on Defendant Dr. Amin's status as a federal employee. Instead, Plaintiff concedes that Defendant Dr. Amin was not a federal employee, (Doc. 110 at 3–5), and, therefore, pursues liability against the United States for the conduct of its employees, who allowed Plaintiff to be subjected to the medical abuses of a federal contractor. (*See* Doc. 80 ¶¶ 387–429). The independent contractor exception does not bar FTCA liability when a government agency is negligent "in discharging a nondelegable duty under state tort law," *Dickerson Inc. v. United States*, 875 F.2d 1577, 1582 (11th Cir. 1989), which Plaintiff sufficiently alleges that the Official Capacity Federal Defendants did. (*See* Doc. 80 ¶¶ 387–429). As a result, the Court finds the Official Capacity Federal Defendants' contention that FTCA liability is barred because Defendant Dr. Amin was an independent contractor, unpersuasive.

### 3.    Assault or Battery Exception

The Official Capacity Federal Defendants contend that the Court lacks subject matter jurisdiction over Plaintiff's FTCA claims because they arise out of assault or battery. (Doc. 100 at 14–18). Congress carved out a number of exceptions to the FTCA's waiver of sovereign immunity, among those claims excepted, are those "arising out of an assault or battery" *Metz v United States*, 788 F.2d 1532–33 (11th Cir. 1986) (citing 28 U.S.C. § 2680(h)). The phrase "arising out of" is construed broadly, to include "all injuries that are dependent upon one of the listed torts having been committed." *Zelaya v. United States*, 781 F.3d 1315, 1333 (11th Cir. 2015) (citing *United States v. Shearer*, 473 U.S. 52, 55 (1985)). In other words, the underlying governmental conduct which constitutes an excepted cause of action must be "essential" to a plaintiff's claims, meaning that there is no other governmental action upon which the claims could rest. *Metz*, 788 F.2d at 1535–6.[11]

Here, the Official Capacity Federal Defendants grossly oversimplify Plaintiff's claims to shoehorn them into the Section 1346(b) exception. (Doc. 100 at 15–17) ("each of Plaintiff's FTCA claims is based in substance upon the non-consensual physical invasions they allegedly

---

[11] Neither Plaintiff nor the Official Capacity Federal Defendants attempt to grapple with the test set out in *Metz*, instead sparring over the meanings of *Sheridan* and *Shearer*, when the proper test, that is binding on this Court, was announced in *Metz*, 788 F.2d at 1534.

suffered"). Although Plaintiff's FTCA claims against the United States depend on Defendant Dr. Amin's actions, the alleged misconduct encompasses a number of improper actions, only one of which Plaintiff characterizes as "Medical Battery."[12] Defendant Dr. Amin may have committed a battery on Plaintiff, but Plaintiff's FTCA claims in no way depend on such a finding. Instead, Plaintiff may be able to establish her FTCA claims through a number of different avenues which tend to show that the United States breached a duty of care to her, or intentionally or recklessly sent her to see Defendant Dr. Amin with knowledge of his prior abuses. In short, although a finding that Defendant Dr. Amin committed battery against Plaintiff might be probative, it is by no means essential. As a result, the Court finds that, because assault or battery is not essential to Plaintiff's FTCA claims against the United States, the Section 1346(b) exception does not apply to those claims. For this reason, the Court finds the Official Capacity Federal Defendants' contention that it does, unpersuasive.

### 4.    Conclusion: FTCA

In sum, the Court rejects all of the Official Capacity Federal Defendants' arguments that the FTCA waiver of sovereign immunity does not extend to Plaintiff's claims against the United States. Accordingly, the Official Capacity Federal Defendants' Motion to Dismiss Plaintiff's FTCA claims is **DENIED**.

### D.    Claims for Equitable Relief

The Official Capacity Federal Defendants move to dismiss Plaintiff's claims for declaratory and injunctive relief contending that the Court lacks subject matter jurisdiction over those claims that ask for such relief, because the claims are moot and the Court lacks jurisdiction to stay a final order of removal. (Doc. 100 at 7–12). Plaintiff does not "oppose dismissal of the equitable claims for declaratory and injunctive relief brought against the [O]fficial [C]apacity [F]ederal [D]efendants." (Doc. 110 at 3). Accordingly, the Official Capacity Federal Defendants' Motion to Dismiss Plaintiff's claims for declaratory and injunctive relief at Counts 2, 5, 6, and 7 is **GRANTED**. Those claims are **DISMISSED-WITH-PREJUDICE** as to the Official Capacity Federal Defendants.

---

[12] The substantive claims against Defendant Dr. Amin are for Gross Negligence, Medical Battery, Medical Malpractice, Intentional Infliction of Emotional Distress, and Negligent Infliction of Emotional Distress. (Doc. 80 ¶¶ 313–69).

### E.    Conclusion

For the reasons discussed in this Section III, the Official Capacity Federal Defendants' Motion to Dismiss (Doc. 100) is **GRANTED-IN-PART** and **DENIED-IN-PART**. Plaintiff's claims at Counts 2, 5, 6, and 7 are **DISMISSED-WITH-PREJUDICE**. The only claims that remain against the Official Capacity Federal Defendants are Plaintiff's FTCA claims against the United States at Counts 15–19. As a result, Defendants Immigration and Customs Enforcement; and Francisco Madrigal, Patrick Lechleitner, Alejandro Mayorkas, Merrick Garland, Patrick Musante, Cesar Ciprian, and Ada Rivera in their official capacities are **DISMISSED** as Parties from the action.

### IV.    DEFENDANTS ICDC AND LASALLE'S MOTION TO DISMISS

#### A.    Procedural Background

On March 29, 2023, Defendants ICDC and Defendant LaSalle filed their Motion to Dismiss. (Doc. 84). Hereinafter the Court will refer to these Parties, collectively, as the ICDC Entity Defendants. Plaintiff filed a Response (Doc. 89) on April 19, 2023, and the "ICDC Entity Defendants" filed a Reply (Doc. 92) on May 3, 2023. All of the Parties' respective briefs have been submitted and the ICDC Entity Defendants' Motion is ripe for ruling.

In their Motion to Dismiss, the ICDC Entity Defendants move the Court to dismiss all of Plaintiff's claims against them pursuant to Rule 12(b)(6). (Doc. 84 at 1–3). Specifically, the ICDC Entity Defendants move to dismiss Plaintiff's Section 1983 claims, at Counts 1 and 3; Plaintiff's Fifth Amendment claim at Count 4; and all of Plaintiff's state law claims, at Counts 8, 9, 10, 12, 14, and 20. (*Id.*)  For the reasons discussed below in this Section IV, the ICDC Entity Defendants' Motion to Dismiss is **GRANTED-IN-PART, DENIED-IN-PART,** and **DENIED-AS-MOOT-IN-PART.**

#### B.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits a party to assert by motion the defense of failure to state a claim upon which relief can be granted. A motion to dismiss a plaintiff's complaint under Rule 12(b)(6) should not be granted unless the plaintiff fails to plead enough facts to state a claim for relief that is plausible, and not merely just conceivable, on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Dismissal for failure to state a claim is

proper if the factual allegations are not 'enough to raise a right to relief above the speculative level.'" *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (quoting *Rivell v. Priv. Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008)). "Stated differently, the factual allegations in the complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief.'" *Edwards*, 602 F.3d at 1291 (quoting *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007)). The plausibility standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice;" rather, a complaint must make plausible, factual assertions that allow the Court to draw the required connections from the alleged harm and the requested relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

The Court must conduct its analysis "accepting the allegations in the complaint as true and construing them in the light most favorable to the [p]laintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). In evaluating the sufficiency of a plaintiff's pleadings the Court must "make reasonable inferences in [p]laintiff's favor, 'but [is] not required to draw plaintiff's inference.'" *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (quoting *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005)), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012). The Supreme Court instructs that while on a motion to dismiss "a court must accept as true all of the allegations contained in a complaint," this principle "is inapplicable to legal conclusions," which "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 555 (courts "are not bound to accept as true a legal conclusion couched as a factual allegation" in a complaint)).

## C.    Capacity to Sue or Be Sued

The ICDC Entity Defendants move to dismiss the claims against Defendant ICDC contending that, as a matter of law, ICDC is not an entity which has the capacity to sue or be sued. (Doc. 84-1 at 5–6). Plaintiff names Defendant ICDC as a "detention facility" which "contracted with the federal government to detain individuals pursuant to federal immigration laws." (Doc. 80 ¶ 19). As a result, it is unclear, from the face of the SAC, the type of legal

entity, if any, ICDC is. The ICDC Entity Defendants contend that, because ICDC is a detention center, it is immune to suit. (Doc. 84-1 at 5).[13]

Under Federal Rule of Civil Procedure 17(b), the capacity to sue or be sued is determined (1) for an individual, the law of that individual's domicile; (2) for a corporation, the law under which it was organized; and (3) for all other parties, the law of the state in which the district court is located. To determine whether Defendant ICDC has the capacity to sue or be sued, therefore, Georgia law controls the relevant inquiry. *See* Fed R. Civ. Proc. 17(b)– (c).[14] Georgia law recognizes three classes of legal entities which are capable of being sued: (1) natural persons; (2) corporations, and (3) "such quasi-artificial persons as the law recognizes as being capable to sue." *Georgia Insurers Insolvency Pool v. Elbert Cnty.*, 368 S.E.2d 500, 502 (Ga. 1988) (quoting *Cravey v. Southeastern Underwriters Ass'n.*, 105 S.E.2d 497 (1958)).

Here, the Court finds that the SAC sufficiently identifies ICDC as an entity to survive a motion to dismiss. The SAC names ICDC as a Defendant, and although the type of entity ICDC may be is unclear at this time, it is clear that Plaintiff sues an entity named ICDC which contracted with the federal government to house immigration detainees. (*See* Doc. 80 ¶ 19). Construing the pleading in the light most favorable to Plaintiff, the Court finds that ICDC might well be a corporation or quasi-organization that is subject to suit under Georgia law.[15] *See Hill*, 321 F.3d at 1335. The Court, therefore, declines the ICDC Entity Defendants' invitation to find, as a matter of law, that ICDC may not be sued when the SAC, construed in the light most favorable to Plaintiff, sufficiently identifies ICDC as a private entity which might have the capacity to be sued.

---

[13] Plaintiff responds to the ICDC Entity Defendants' contention that ICDC cannot be sued by arguing "ICDC is identified as the local government in several modifications to [sic] Intergovernmental Agreement No. 20-07-0058." (Doc. 90 at 2). However, at this stage, the Court does not make a finding as to ICDC's ultimate legal status as it may ultimately be determined upon discovery or a Motion for Summary Judgment.

[14] As the Court will discuss, the ICDC Entity Defendants and Plaintiff disagree about whether ICDC is more properly characterized as a detention center or a Georgia corporation. In either case, however, Georgia law controls the inquiry. *See* Fed R. Civ. P. 17(b)-(c).

[15] The Court notes that, throughout Plaintiff's Response briefs, she asks the Court to deny Defendants' motions to dismiss because further discovery is necessary to determine certain aspects of her claim. Although discovery may indeed be helpful to evaluating the ultimate question of liability, in federal court, a pleading must still be sufficient, on its face, to survive a motion to dismiss. *See Twombly*, 550 U.S. at 570. Accordingly, to the extent Plaintiff argues that the potential aid of further discovery could ever be a reason to deny a motion to dismiss in federal court, the Court is unpersuaded.

The ICDC Entity Defendants cite a footnote in an unpublished Eleventh Circuit case, and several federal district court cases that have found that ICDC or other "detention centers" are not entities that are capable of being sued under Georgia law. (Doc. 227-1 at 4). The Court, however, is unpersuaded by the reasoning in these cases, as it must be with such authority, because they provide only weak support for the proposition that detention centers, categorically, may not be sued under Georgia law. *Brannon v. Thomas Cnty. Jail*, 280 F.App'x 930, 933 (11th Cir. 2008) (unpublished decision citing *Georgia Insurers*, in a footnote, without analysis, for the proposition that a detention center cannot be sued, when *Georgia Insurers* deals only with the capacity of an insurance company to sue or be sued); *Hickling v. Irwin Cnty. Det. Ctr.*, No. 7:10-CV-103 (HL), 2010 WL 3927798, at *2 (M.D. Ga. Sept. 29, 2010) (finding that ICDC was not an entity capable of being sued under Section 1983 when dismissing a *pro se* complaint, but without addressing the possibility that ICDC might be a private entity capable of suit in that capacity); *Brown v. United States*, No. CV 188-139, 2019 WL 415330, at *3 (S.D. Ga. Feb. 1, 2019) (finding, in a report and recommendation, that ICDC did not have the capacity to be sued in the Section 1983 context, relying on persuasive authority which questionably supports that proposition) *report and recommendation adopted*, No. CV 118-139, 2019 WL 938885 (S.D. Ga. Feb. 26, 2019); *Goodman v. The Robert A. Deyton Det. Facility*, No. 1:15-cv-1724-TWT, 2015 WL 5480046, at *3 (N.D. Ga. Sept. 15, 2015) (relying on the footnote in *Brannon* to find that a detention facility in Georgia may not be sued, which, as noted, the Court does not find persuasive).

The Court, therefore, will not follow the lead of the cases the ICDC Entity Defendants cite and, as a result, does not accept the proposition that detention centers, categorically, cannot be subject to suit. Particularly because the ICDC Entity Defendants can point to no Georgia case which directly supports that proposition, and it is doubtful that a private detention facility would be entitled to the same immunities as protects a Georgia state detention center run by a Georgia municipal corporation. Accordingly, the ICDC Entity Defendants' Motion to Dismiss the claims against ICDC because it is a private entity without the capacity to sue or be sued is **DENIED-WITHOUT-PREJUDICE**.

D.    **Section 1983 Claims**

The ICDC Entity Defendants move to dismiss Plaintiff's claims against them under 42 U.S.C. § 1983, at Counts 1 and 3, because they were not state actors. (Doc. 84-1 at 6–8). Plaintiff attempts to chart two novel routes to recovery under Section 1983. First, that the ICDC Entity Defendants, private detention center entities, are state actors by virtue of their contract with Irwin County, Georgia, notwithstanding the fact that the detainees held at ICDC are held in civil immigration detention pursuant to federal law, on behalf of the federal government. (Doc. 80 ¶ 184, 218). Second, that Irwin County's delegation of its duties under the IGA to the ICDC Entity Defendants rendered them the functional equivalent of that municipality and, therefore, subject to municipal liability under Section 1983. (*Id.* ¶ 196, 231) (citing *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978)).

Section 1983 creates a cause of action which allows an individual whose federal constitutional or statutory rights have been violated to seek damages from the state actor who caused the violation. 42 U.S.C. § 1983. A Section 1983 claim, therefore, requires a showing that the conduct complained of (1) was committed by a person acting under color of state law and (2) that conduct deprived a plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 156–57 (1978)).  "The purpose of [Section] 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254–57 (1978)). As a result, and critically, Section 1983 does not apply when a federal actor is acting under color of federal law. *Mack v. Alexander*, 575 F.2d 488, 489 (5th Cir. 1978);[16] *see Carman v. Parsons*, 789 F.2d 1532, 1534 (11th Cir. 1986).

Although it is somewhat unclear, it appears that Plaintiff's main support for her contention that the ICDC Entity Defendants are state actors is a line of cases which have found that private actors, performing certain state functions, may be acting on behalf of the

---

[16]Decisions of the former Fifth Circuit rendered before its partition on October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc)).

state. (Doc. 89 at 2–4) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (holding that a private company may be a state actor when it engages in a conspiracy with the state); *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997) (finding that a private prison health service that contracted with a county sheriff's office to house detainees pursuant to state law was the functional equivalent of a municipality in the context of a *Monell* claim); *West v. Atkins*, 487 U.S. 42, 55 (1988) (finding that when a state had delegated its own affirmative duty to care for state prisoners to a private medical provider, that medical provider was acting under color of state law); *Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003) (holding that a private prison company that held state prisoners could be sued under Section 1983, in a Fifth Circuit case decided after the partition of the Eleventh and Fifth Circuits); *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 101 (6th Cir. 1991) (holding that a private prison company operating a detention center for state prisoners could be sued under Section 1983).

The Court agrees with Plaintiff to the extent that private companies who are holding prisoners on behalf of a state may be liable under Section 1983. However, these cases do not answer the salient inquiry here: whether a private company is acting under color of state law when they are holding federal detainees on behalf of the federal government, solely because a state entity serves as a contractual intermediary between the private company and the federal government. Neither the Eleventh Circuit nor the Supreme Court have weighed in on this issue and it is, therefore, one of first impression.

### 1.    State Actor Inquiry

Neither the ICDC Entity Defendants nor Plaintiff fully engage with the tests by which a court determines whether a private entity may be acting under color of state law. An analysis under the relevant tests, however, reveals that Plaintiff has not sufficiently pleaded that the ICDC Entity Defendants were acting under color of state law.

To be acting under color of state law for purposes of Section 1983, a defendant must have "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Myers v. Bowman*, 713 F.3d 1319, 1329 (11th Cir. 2013) (quoting *West*, 487 U.S. at 49). Private parties, such as the ICDC Entity Defendants, act with such authority as a state actor only in three "rare" circumstances:

(1) the State has coerced, or at least significantly encouraged, the action alleged to violate the Constitution ("State compulsion test"); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State ("public function test"); or (3) the State had so far insinuated itself into a position of interdependence with the private parties that it was a joint participant in the enterprise ("nexus/joint action test").

*Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347–48 (11th Cir. 2001) (citing *Nat'l Broad. Co. v. Commc'ns. Workers of Am.*, 860 F.2d 1022, 1026–27 (11th Cir. 1988)) (internal quotation marks omitted). An analysis of Plaintiff's allegations against the ICDC Entity Defendants under any relevant test reveals that Plaintiff has failed to sufficiently allege facts showing the ICDC Entity Defendants were state actors for purposes of Section 1983 liability.

### a.    State Compulsion Test

The State compulsion test requires a showing that a state has "exercised coercive power or has provided such significant encouragement, either overt or covert that the private actor's choice must be deemed that of the state." *Langston By & Through Langston v. ACT*, 890 F.2d 380, 385 (11th Cir. 1989). Here, the SAC does not allege that Irwin County exercised any coercive power over the ICDC Entity Defendants or encouraged those Defendants to take any action beyond entering into a voluntary contract with them, let alone such action that it would be fair to characterize the ICDC Entity Defendants' treatment of Plaintiff as a choice that "must be deemed that of the state." (*See* Doc. 80 ¶¶ 147–49). Instead, the SAC merely alleges that "Defendant ICE contracts with Irwin County, which in turn contracts with Defendant LaSalle, for the operation of the detention facility." (*Id.* ¶ 157). From this, Plaintiff surmises that "Defendant ICDC, LaSalle, and their employees, agents, contractors, and/or officers are state or local actors and subject to suit under [Section 1983.]" (*Id.*) The Court, as noted, is not required to accept such legal conclusions as true, *Iqbal*, 556 U.S. at 679, and the fact that a contract existed between Irwin County and Defendant LaSalle is simply insufficient to support an allegation of fact that the ICDC Entity Defendants were acting under a state compulsion. Accordingly, the Court finds that Plaintiff has not sufficiently pleaded that the ICDC Entity Defendants were state actors under the State compulsion test.

### b.    Public Function Test

The public function test requires a showing that private actors are given powers, or perform functions, that are "traditionally the exclusive prerogative of the state." *Harvey*, 949

F.2d at 1131. Here, Irwin County had no prerogative in its own right, as a county in the state of Georgia, to detain Plaintiff. Instead, the ICDC Entity Defendants held Plaintiff in civil detention pursuant to federal immigration law, authority which had been passed to Irwin County by the federal government, who, in turn, passed that authority along to the ICDC Entity Defendants. (Doc. 80 ¶ 157). At no point in this exchange, however, did the fundamental character of the authority change from one that existed by virtue of federal law, to one that was the prerogative of Irwin County or the State of Georgia. The SAC, therefore, does not sufficiently allege that the ICDC Entity Defendants were exercising powers or functions that are the exclusive prerogative of the State with respect to their alleged violations of Plaintiff's constitutional rights. Accordingly, the Court finds that Plaintiff has not sufficiently pleaded that the ICDC Entity Defendants were state actors under the public function test.

### c.    Nexus/Joint Action Test

The nexus/joint action test requires a showing that the State has "so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *Harvey*, 949 F.2d at 1131 (citing *Nat'l Broad. Co.*, 860 F.2d at 1026). The mere existence of a contract between a State entity and a private actor does not mean that every action taken by that private actor can be attributed to the State. *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1278–79 (11th Cir. 2003). Instead, a plaintiff must allege that the governmental body and the private party were "intertwined in a symbiotic relationship," and that symbiotic relationship must involve "the specific conduct of which the plaintiff complains." *Id.* (quoting *Rayburn*, 241 F.3d at 1348).

Here, it is not clear from the allegations in the SAC that Irwin County had any participation in the administration of ICDC, let alone the insinuation required for the nexus/joint action test, because Irwin County had passed all of its obligations to administer the facility along to the ICDC Entity Defendants. (*See* Doc. 80 ¶¶ 147–60). While Plaintiff alleges substantial ICE involvement in the administration of ICDC, the SAC alleges no analogous Irwin County involvement. (*See Id.* ¶¶ 161–82). Therefore, upon the allegations, the ICDC Entity Defendants can hardly be said to be "intertwined in a symbiotic relationship" with Irwin County. *See Pinellas*, 344 F.3d at 1278–79. Plaintiff, in effect, argues that the Court

should infer such a relationship from the mere existence of a contract with Irwin County, (*see* Doc. 89 at 5), but that, by itself, is simply insufficient to allege that the ICDC Entity Defendants were "a joint participant in the enterprise," as to the violations alleged. *See Harvey*, 949 F.2d at 1131. Accordingly, Plaintiff has not sufficiently pleaded that the ICDC Entity Defendants were state actors under the nexus/joint action test.

> ### d.    Conclusion: State Actor

Because Plaintiff has not sufficiently pleaded that the ICDC Entity Defendants were state actors under the State compulsion test, the public function test, or the nexus/joint action test, she has not sufficiently alleged that the ICDC Entity Defendants were acting under color of state law, which is fatal to her Section 1983 claim.

> ## 2.    Municipal Liability

Plaintiff, alternatively, asserts that the ICDC Entity Defendants may be liable under a theory of municipal liability, sometimes dubbed "*Monell* liability." (Doc. 80 ¶¶ 196, 231). Under *Monell*, a municipality may be held liable if a municipal policy causes a federal constitutional violation. *Monell*, 436 U.S. at 690. Even to the extent that either Defendant LaSalle or Defendant ICDC could be characterized as a "municipality"—something the Court doubts but need not decide—the statutory text and Eleventh Circuit authority plainly require that a defendant be acting under color of state law to establish Section 1983 liability. *See* 42 U.S.C. § 1983 ("every person who, under color of any statute, ordinance regulation, custom, or usage . . . subjects a person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law"); *Harvey*, 949 F.2d at 1130 ("Even if Mrs. Harvey could attribute [municipal liability to a private party defendant] she is unable to state a claim for Section 1983 relief. A successful section 1983 action requires a showing that the conduct complained of was committed by a person [or entity] acting under color of state law[.]" (enumeration removed)). As the Court has already discussed at length, Plaintiff has failed to sufficiently plead that the ICDC Entity Defendants were acting under color of state law, and therefore, cannot be subject to any liability, municipal or otherwise, under Section 1983.

### 3.    Conclusion: Section 1983

In sum, because Plaintiff has failed to sufficiently plead that the ICDC Entity Defendants were acting under color of state law when they allegedly violated Plaintiff's constitutional rights, Plaintiff has failed to state a claim under Section 1983, under any theory alleged. Accordingly, the ICDC Entity Defendants' Motion to Dismiss Plaintiff's Section 1983 Claims, at Counts 1 and 3, is **GRANTED**. As a result, those claims are **DISMISSED-WITH-PREJUDICE** with respect to the ICDC Entity Defendants.[17]

### E.    Fifth Amendment Claim

The ICDC Entity Defendants move to dismiss Plaintiff's claims against them under the Fifth Amendment at Count 4, because those claims against them are moot. (Doc. 84-1 at 9). At Count 4, Plaintiff brings a claim for declaratory and injunctive relief for violations of her Fifth Amendment rights to be free of punitive conditions of confinement and deliberate indifference to serious medical needs. (Doc. 80 ¶¶ 237–54).

"A case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Troiano v. Supervisor of Elections in Palm Beach Cnty, Fla.*, 382 F.3d 1276, 1282 (11th Cir. 2004) (quoting *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335–36 (11th Cir. 2001) (per curiam)). A federal court determination of a moot controversy would be an impermissible advisory opinion. *Christian Coalition of Ala. v. Cole*, 355 F.3d 1288, 1291 (11th Cir. 2004). This requirement is imposed by the Article III limitation of federal court jurisdiction to "Cases" and "Controversies[.]" *Troiano*, 382 F.3d at 1282 (quoting *Al Najjar*, 273 F.3d at 1335–36). Standing must continue throughout the pendency of the lawsuit. *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 68 n.22 (1997).

Here, as the ICDC Entity Defendants point out, according to the SAC, the federal government terminated its contract to hold detainees at ICDC in October 2021, (Doc. 80 ¶ 19), and there is no allegation in the SAC that the ICDC Entity Defendants continue to be responsible for Plaintiff's detention. The Fifth Amendment claim against the ICDC Entity

---

[17] Plaintiff's counsel also argues that Plaintiff "has adequately alleged a *Bivens* claim pursuant to 42 U.S.C. § 1983." (Doc. 89 at 6). A claim under Section 1983 and *Bivens* are, of course, distinct causes of action, as demonstrated by the *Oldaker* Plaintiffs when they brought distinct claims under both 42 U.S.C. § 1983 and *Bivens*. Plaintiff's counsel, in this action, apparently copied the *Oldaker* Plaintiffs' *Bivens* claims nearly verbatim. Plaintiff adds nothing in support of the contention that a *Bivens* claim exists and is valid as alleged.

Defendants alleges constitutional violations which occurred while Plaintiff was in their custody, as a result of a contract with the federal government. (*See Id.* 53–71, 74–97, 147–82) Since then, however, Plaintiff no longer remains in the ICDC Entity Defendants' custody and, for this reason, a declaration that those Defendants' conduct toward her violated the Constitution would not provide meaningful relief. As a result, Plaintiff's Constitutional claims against the ICDC Entity Defendants are moot. The ICDC Entity Defendants' Motion to Dismiss Plaintiff's Constitutional claims against them is, therefore, **GRANTED**. As a result, those claims are **DISMISSED-AS-MOOT**.

### F.    State Law Claims

The ICDC Entity Defendants move to dismiss Plaintiff's state law claims against them at Counts 8, 9, 10, 12, 14 and 20. Although the ICDC Entity Defendants argue that Plaintiff fails to state a claim for each of her state law claims, the Court need not reach that issue, because it declines to exercise supplemental jurisdiction over Plaintiff's state law claims against the ICDC Entity Defendants.

District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. As a result, the Court has original jurisdiction over Plaintiff's federal claims. District courts may exercise supplemental jurisdiction over state-law claims, that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]" 28 U.S.C § 1367(a). The Court, therefore, may exercise supplemental jurisdiction over Plaintiff's state-law claims.

A district court, however, may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). When deciding whether to exercise supplemental jurisdiction over a state-law claim the Court should consider "judicial economy, fairness, and comity[.]" *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002) (citing *Baggett v. First Nat'l Bank of Gainesville*, 177 F.3d 1342, 1353 (11th Cir. 1997)). Both comity and judicial economy are served when state courts are given the opportunity to resolve issues of state law. *Rowe*, 279 F.3d at 1288. And this argument to decline jurisdiction is particularly strong when federal law claims have been dismissed prior to trial. *Id.*

Here, the Court has granted the ICDC Entity Defendants' Motion to Dismiss all federal claims against it. Considering judicial economy, fairness, and comity, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against the ICDC Entity Defendants. As such, the Court makes no determination as to the merits of those state law claims. Accordingly, Plaintiff's state-law claims against the ICDC Entity Defendants, at Counts 8, 9, 10, 12, 14, and 20 are **DISMISSED-WITHOUT-PREJUDICE.** The ICDC Entity Defendants' Motion to Dismiss Plaintiff's state-law claims is, therefore, **DENIED**, on the grounds asserted, as moot.

### G.    Conclusion

For the reasons discussed above, in this Section IV, the ICDC Entity Defendants' Motion to Dismiss (Doc. 84) is **GRANTED-IN-PART**, **DENIED-IN-PART**, and **DENIED-AS-MOOT-IN-PART**. Plaintiff's federal claims against the ICDC Entity Defendants at Counts 1, 3, and 4 are **DISMISSED-WITH-PREJUDICE**. Because the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against the ICDC Entity Defendants, at Counts 8, 9, 10, 12, 14 and 20, those claims are **DISMISSED-WITHOUT-PREJUDICE**. Therefore, no claims remain in the above-captioned action against the ICDC Entity Defendants. As a result, Irwin County Detention Center and LaSalle Southeast, LLC are hereby **DISMISSED** as Parties from the action.

## V.    DEFENDANT WARDEN DAVID PAULK'S MOTION TO DISMISS

### A.    Procedural Background

On March 29, 2023, Defendant Warden David Paulk ("Defendant Paulk") filed a Motion to Dismiss (Doc. 85). Plaintiff filed a Response (Doc. 87) on April 19, 2023, and Defendant Paulk filed a Reply (Doc. 93) on May, 3 2023. All the Parties' respective briefs have been submitted and Defendant Paulk's Motion to Dismiss is ripe for ruling.

Defendant Paulk moves the Court to dismiss Plaintiff's claims against him in his individual and official capacities. Specifically, Plaintiff's Section 1983 claims at Counts 1 and 3, Claim for a violation of Plaintiff's Fifth Amendment rights, for injunctive and declaratory relief in his official capacity, and for damages pursuant to *Bivens*, at Count 4, and all state law claims asserted against him at Counts 8, 9, 10, 12, 14, and 20. For the reasons discussed below

in this Section V, Defendant Paulk's Motion to Dismiss is **GRANTED-IN-PART**, and **DENIED-AS-MOOT-IN-PART**.[18]

### B.    Standard of Review

For the sake of brevity, the Court incorporates by reference the standard of review set forth above. *See* discussion *supra* Section IV.B.

### C.    Section 1983 Claims

Defendant Paulk moves to dismiss Plaintiff's claims against him under 42 U.S.C. § 1983, at Counts 1 and 3, because he was not acting under color of state law. (Doc. 85-1 at 4–9). As the Court has discussed at length, *supra* Section IV.D, Plaintiff does not state a claim against the ICDC Entity Defendants because they were not sufficiently alleged to be state actors. Defendant Paulk was the warden at ICDC during the times relevant to Plaintiff's alleged constitutional violations. (Doc. 80 ¶ 21). Although it is unclear from the SAC, it appears that Defendant Paulk was an employee of either LaSalle or ICDC, and there is no suggestion that he was employed by Irwin County. (*See Id.* ¶¶ 19–21, 35–36). In any case, the SAC does not allege there was any greater state involvement with Defendant Paulk's conduct than there was with LaSalle's or ICDC's.

As noted, Section 1983 liability is possible only "if the wrongdoer is clothed with the authority of state law." *Myers*, 713 F.3d at 1329. And a plaintiff can establish that a private party, like Defendant Paulk, as an employee at a privately run detention center, acts with such authority only if they can satisfy the state compulsion test, the public function test, or the nexus/joint action test. *Rayburn*, 241 F.3d at 1347–48. Here, for the same reasons discussed with respect to the ICDC Entity Defendants, Plaintiff has not alleged facts which are sufficient to establish that Defendant Paulk was a state actor under any of these tests, chiefly because he was holding civil immigration detainees on behalf of the federal government. (*See* Doc. 80 ¶¶ 19–21, 93). As a result, the Court finds that Plaintiff has failed to sufficiently plead that

---

[18]Defendant Paulk does not enumerate the specific claims alleged against him in his official capacity but moves for dismissal of all of those claims. (Doc. 85). In addition to the claims that name Defendant Paulk in his individual capacity, the SAC alleges Counts 8, 9, 10, 12, 14, and 20 against the ICDC Entity Defendants. An official capacity suit is "simply 'another way of pleading an action against an entity of which an officer is an agent.'" *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). As a result, Counts 8, 9, 10, 12, 14, and 20, are alleged against Defendant Paulk in his official capacity. The Court will construe Defendant Paulk's Motion as moving for dismissal of those claims against him in his official capacity.

Defendant Paulk was acting under color of state law for purposes of Section 1983 liability and, therefore, Plaintiff has failed to state a claim under Section 1983.

Plaintiff also appears to allege a *Monell* municipal liability claim against Defendant Paulk. (*See* Doc. 80 ¶ 231) and invokes the "causal connection" language of a supervisory liability claim in her Response—suggesting she wishes to allege one. (Doc. 87 at 7–8); *see Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), *abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010). However, as with the municipal liability claim against the ICDC Entity Defendants, a party must still be acting under color of state law to be liable under Section 1983. *See* 42 U.S.C § 1983; *Harvey*, 949 F.2d. at 1129–33. Because Plaintiff has not sufficiently pleaded that Defendant Paulk was acting under color of state law he is not subject to either municipal or supervisory Section 1983 liability.

Accordingly, because Plaintiff has failed to sufficiently plead that Defendant Paulk was acting under color of state law, which is fatal to a Section 1983 claim regardless of Plaintiff's theory of liability, Defendant Paulk's Motion to Dismiss Plaintiff's Section 1983 claims against him, at Counts 1 and 3, is **GRANTED**, and those claims against Defendant Paulk are **DISMISSED-WITH-PREJUDICE**.

### D.  First Amendment Claim

Defendant Paulk moves to dismiss Plaintiff's First Amendment claim against him, to the extent alleged. (Doc. 85-1 at 9). The caption of Count 4 reads "Violation of the Fifth Amendment (Alternative First Amendment Claim against ICDC Defendants under *Bivens*)," (Doc. 80 at 65) and a paragraph in Count 4 also mentions a violation of the First Amendment (Doc. 80 ¶ 238) ("Defendants are liable for declaratory and injunctive relief under the First Amendment"). However, the substance of Count 4 alleges violations of Plaintiff's Fifth Amendment Due Process right to be free from punitive conditions of confinement and deliberate indifference to serious medical needs. This is an identical typographical error to the one made by the plaintiffs in the related case, *Oldaker v. Giles*.[19] However, the *Oldaker* plaintiffs admitted that this was error and brought it to the attention of the Court, where Plaintiff, here, has not. The Court, therefore, doubts that Plaintiff intends to allege a First Amendment

---

[19] *See* Order at 20-21 & n.16, *Oldaker*, No. 7:20-CV-224 (M.D. Ga. Mar. 22, 2024), ECF No. 362.

violation, particularly because recent Supreme Court jurisprudence has announced that a *Bivens*[20] remedy is unavailable for violations of the First Amendment. *See Egbert v. Boule*, 596 U.S. 482, 497 (2022). In an abundance of caution, however, the Court finds that these conclusory allegations about a violation of the First Amendment fail to satisfy the pleading requirements of *Iqbal* and *Twombly*. Therefore, Plaintiff fails to state a claim for a violation of the First Amendment, to the extent Plaintiff even alleges one. Accordingly, Defendant Paulk's Motion to Dismiss Plaintiff's First Amendment Claim, at Count 4, is **GRANTED** and, as a result, that claim against him is **DISMISSED-WITH-PREJUDICE**.

### E.    Fifth Amendment Claims

Plaintiff alleges a claim, at Count 4, for violations of her Fifth Amendment rights against Defendant Paulk in his individual capacity for damages under *Bivens*, and against Defendant Paulk in his official capacity for declaratory and injunctive relief. (Doc. 80 ¶ 235–54). Although, in his Motion, Defendant Paulk does not distinguish between these claims, the Court must do so, because each requires its own analysis.

#### 1.    Individual Capacity Claim

Defendant Paulk moves to dismiss Plaintiff's claims for violation of the Fifth Amendment against him in his individual capacity for damages under *Bivens*, at Count 4. (Doc. 85-1 at 9–11). A claim under *Bivens*, allows a plaintiff whose federal constitutional rights have been violated by federal officers, acting under color of federal law, to bring a claim for damages against that officer. Unlike Section 1983, which is a congressionally authorized remedy for constitutional violations committed under color of state law, the authority to recognize *Bivens* actions against federal actors is anchored in the inherent power of federal courts to decide all cases "arising under the Constitution, laws, or treaties of the United States." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66–67 (2001) (quoting 28 U.S.C. § 1331). As a result, *Bivens* is far more limited in scope than Section 1983, authorizing recovery only in certain types of cases. *See Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017).[21]

---

[20] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

[21] For the purposes of this analysis, the Court assumes, without necessarily finding, that Defendant Paulk, and the other ICDC Defendants were acting under color of federal law, not state, when they committed the alleged constitutional violations.

To determine whether to recognize a claim under *Bivens*, courts engage in a two-step inquiry. First, a court asks "whether [the case] involves a claim that arises in a 'new context'" *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) (quoting *Malesko*, 534 U.S. at 68); *see Alvarez v. U.S. Immig. & Customs Enf't*, 818 F.3d 1194, 1206 (11th Cir. 2016). If so, a Court then asks whether there are any "special factors that counsel hesitation" about extending *Bivens* into the proposed new context." *Hernandez*, 140 S. Ct. at 743.[22]

### a.    New Context

The Court first inquires into whether Plaintiff's Fifth Amendment Due Process claim arises in a new *Bivens* context. A context is new if a case "is different in a meaningful way from previous *Bivens* [claims authorized by the Supreme Court.]" *Abassi*, 582 U.S. at 139. A case might differ in a meaningful way because of

> [T]he rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 139–40.

The Supreme Court has inferred a private cause of action against federal officers under *Bivens* in three contexts. First, in *Bivens* itself the Supreme Court recognized an implied private action for damages against federal officers who have violated a plaintiff's Fourth Amendment rights when acting in their official capacities. *Alvarez*, 818 F.3d at 1205–06 (citing *Bivens*, 403 U.S. at 388). Second, in *Davis v. Passman*, the Supreme Court recognized a Fifth Amendment implied damages remedy for a congressional staffer who was dismissed on the basis of sex. *Hernandez*, 140 S. Ct. at 741 (citing *Davis*, 442 U.S. 228 (1979)). And third, in *Carlson v. Green*, the Supreme Court recognized a damages remedy for a federal prisoner's Eighth Amendment claim for failure to provide adequate medical treatment. *Hernandez*, 140. S. Ct. at 741 (citing *Carlson*, 446 U.S. 14 (1980)).

---

[22] The Court notes that since *Abbasi*, the Eleventh Circuit has not examined *Bivens* authority in depth. As a result, the Court relies on Supreme Court authority for its analysis, as recent Supreme Court decisions have significantly changed the *Bivens* landscape.

Here, the closest analogue to Plaintiff's Fifth Amendment claim is *Carlson*. However, "even a modest extension [of a previous *Bivens* context] is still an extension." *Abbasi*, 582 U.S. at 146–49. The Court finds that Plaintiff's Fifth Amendment Due Process claim against Defendant Paulk is meaningfully different than previous *Bivens* contexts. The Court identifies, at least, two relevant distinctions. First, Plaintiff claims a violation of the Fifth Amendment, where the plaintiff in *Carlson* alleged a violation of his Eighth Amendment rights. Second, Plaintiff's claim against Defendant Paulk is against him in his role as the warden of a private detention facility, (Doc. 80 ¶ 21), unlike the defendants in *Carlson* who were officials at a federal corrections center. *See Carlson*, 446 U.S. at 16 n.1. Defendant Paulk was, therefore, operating under a significantly different statutory and legal mandate, and there was far less judicial guidance on his constitutional duties to detainees under his supervision. *See Abbasi*, 582 U.S. at 148. These distinctions, however modest, render Plaintiff's claim meaningfully different than the *Bivens* claim authorized in *Carlson* as well as the contexts of *Bivens* and *Davis*. As a result, the Court finds that Plaintiff's Fifth Amendment *Bivens* claim arises in a new context from previously recognized *Bivens* claims, and therefore, the Court turns to the question of whether to extend *Bivens* to Plaintiff's proposed new context.

    **b.**    **Extending *Bivens* to Plaintiff's Claim**

Recognizing a new cause of action under *Bivens* is "a disfavored judicial activity." *Egbert*, 596 U.S. at 482 (citing *Abbasi*, 582 U.S. at 135). The Supreme Court has, therefore, refused to extend *Bivens* to any new context or new category for more than thirty years. *See Abbasi*, 582 U.S. at 135. As recent Supreme Court jurisprudence instructs, Courts should be reluctant to extend *Bivens* because the power to create causes of action is "a legislative endeavor," and Courts are ill-equipped to weigh the range of policy considerations that a legislature might rely on to create a new cause of action. *See Egbert*, 596 U.S. at 491; *Hernández*, 140 S. Ct. at 742–43; *Abbasi*, 582 U.S. at 135–36.

Nevertheless, Plaintiff asks the Court to extend *Bivens* to recognize a novel action for deliberate indifference to her serious medical needs, and imposing punitive conditions of confinement, all in violation of her Fifth Amendment Due Process Rights. (*See* Doc. 210 ¶¶ 237–54). The Court, however, will extend *Bivens* into a new context only if there are no "special factors counselling hesitation in the absence of affirmative action by Congress." *Abbasi*, 582

U.S. at 136–37. Although the Supreme Court has never defined the phrase "special factors counselling hesitation," that inquiry requires the Court to focus on "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* "Even a single sound reason to defer to Congress, is enough to require a court to refrain from creating such a remedy." *Egbert*, 596 U.S. at 491 (citing *Nestlé USA, Inc. v. Doe*, 593 U.S. 628, 634 (2021) (plurality opinion)) (internal quotations removed). Two considerations counsel hesitation here.

First, the purpose of a *Bivens* remedy is to deter federal officials from committing constitutional violations, and that consideration is less acute when a private actor violates the constitution. *Malesko*, 534 U.S. at 71 (citing *F.D.I.C.*, 510 U.S. at 474). The *Malesko* Court found cause for hesitation in similar circumstances. *Malesko* examined the issue of whether to extend a *Bivens* remedy for deliberate indifference to medical needs against a private prison corporation, acting pursuant to a contract with the Federal Bureau of Prisons. *Malesko*, 534 U.S. at 66–74. In *Malesko*, the Supreme Court declined to extend *Bivens* liability to a private prison corporation because, among other factors, judgments against those corporations would have little deterrent effect on federal officials. *Id.* at 70. Defendant Paulk, as an employee of a private detention center operating under a contract with a state county to hold detainees for the federal government, is several steps further removed from federal officials than the Defendant in *Malesko*, and, therefore, a *Bivens* remedy against him would be even less likely to have the deterrent effect on the conduct of federal officials contemplated by *Bivens* and its progeny. This diminished deterrent effect of a judgment against private detention center officials, therefore, counsels hesitation before extending *Bivens* to Plaintiff's Fifth Amendment Claim.

Second, the availability of an alternative means of relief may alone counsel hesitation before extending a *Bivens* remedy. *Abbasi*, 582 U.S. at 137. This can be the case either if Congress has fashioned a remedy, *Bush v. Lucas*, 462 U.S. 367, 379 (1983), or state law provides relief for a plaintiff's injury, *Minneci v. Pollard*, 565 U.S. 118, 120–21 (2012). Defendant Paulk contends that the availability of alternative state law remedies is another factor counselling hesitation. (Doc. 85-1 at 11) The Court agrees. There are alternative state law remedies which Plaintiff could use to pursue relief for the alleged unconstitutional conduct by Defendant

Paulk, as evidenced by the many state law claims she asserts against Defendant Paulk and the other ICDC Defendants. As a result, the Court finds that the availability of alternative means of relief counsels hesitation before extending a *Bivens* remedy to Plaintiff's Fifth Amendment Claim.

Because the Court has identified two factors which counsel hesitation before extending Plaintiff's proposed Fifth Amendment *Bivens* claim to the deliberate indifference and punitive conditions of confinement context, the Court declines to authorize such an extension. Accordingly, Defendant Paulk's Motion to Dismiss Plaintiff's Fifth Amendment *Bivens* Claim against him in his individual capacity, at Count 4, is **GRANTED**. That claim, therefore, is **DISMISSED-WITH-PREJUDICE**.

### 2.    Official Capacity Claim

Plaintiff also brings a claim at Count 4 against Defendant Paulk in his official capacity for violations of her Fifth Amendment rights asking for declaratory and injunctive relief. This is distinct from *Bivens* which is a damages remedy for violations of federal constitutional rights against a federal actor in their individual capacity. Although Defendant Paulk moves to dismiss Count 4 against him in his official capacity, (*see* Doc. 85 at 1–2), his Memorandum in Support of his Motion to Dismiss fails to make any arguments why dismissal of these claims is warranted. (*See generally* Doc. 85-1). However, the Court is obligated to examine *sua sponte* its own jurisdiction to hear a case, notwithstanding the contentions, or lack thereof, of the parties. *See DeRoy v. Carnival Corp.*, 963 F.3d 1302, 1311 (11th Cir. 2020).

An official capacity suit is "simply 'another way of pleading an action against an entity of which an officer is an agent.'" *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). As a result, Plaintiff's claim against Defendant Paulk in his official capacity, is another way of pleading an action against the ICDC Entity Defendants. For the reasons discussed *supra* Section IV.E, now that Plaintiff no longer remains in custody at ICDC, declaratory and injunctive relief relating to conduct which occurred when she was detained there would not provide meaningful relief. As a result, the Court has found that the Fifth Amendment Claim against the ICDC Entity Defendants is moot; and, because the claim against those Defendants is equivalent to a claim against Defendant Paulk in his official capacity, Plaintiff's claim against Defendant Paulk in that capacity for a violation of the Fifth Amendment is likewise moot.

The Court lacks subject matter jurisdiction to hear a moot claim, *see Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1182 (11th Cir. 2007). As a result, Plaintiff's claim at Count 4 against Defendant Paulk in his official capacity is **DISMISSED-AS-MOOT**.

### F.    State Law Claims

Defendant Paulk moves to Dismiss Plaintiff's state law claims against him in his individual and official capacities at Counts 8, 9, 10, 12, 14, and 20. (Doc. 85 at 1). The Court, however, has granted Defendant Paulk's Motion to Dismiss all of Plaintiff's federal claims against him, and need not reach the merits of Plaintiff's state law claims because it declines to exercise supplemental jurisdiction over those claims. For the reasons discussed *supra* Section IV.F, with respect to the ICDC Entity Defendants, and considering judicial economy, fairness, and comity, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against Defendant Paulk. Accordingly, Plaintiff's state-law claims against Defendant Paulk in his individual and official capacities, at Counts 8, 9, 10, 12, 14, and 20, are **DIMISSED-WITHOUT-PREJUDICE**. Defendant Paulk's Motion to Dismiss Plaintiff's state law claims is, therefore, **DENIED**, on the grounds asserted, as moot.

### G.    Conclusion

For the reasons discussed above, in this Section V, Defendant Paulk's Motion to Dismiss (Doc. 85) is **GRANTED-IN-PART**, and **DENIED-AS-MOOT-IN-PART**. All federal claims against him in his individual and official capacities at Counts 1, 3, and 4, are **DISMISSED-WITH-PREJUDICE**. Because the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against Defendant Paulk in his individual and official capacities, at Counts 8, 9, 10, 12, 14, and 20 those claims are **DISMISSED-WITHOUT-PREJUDICE**. Therefore, no claims remain in the above-captioned action against Defendant Paulk. As a result, David Paulk, in his individual and official capacities, is hereby **DISMISSED** as a party from the action.

## VI.    DEFENDANT DR. AMIN'S MOTION TO DISMISS

### A.    Procedural History

Defendant Dr. Mahendra Amin ("Defendant Dr. Amin") filed a Motion to Dismiss (Doc. 86) on April 15, 2023. Plaintiff filed her Response (Doc. 95) on May 19, 2023. And

Defendant Dr. Amin filed his Reply (Doc. 97) on June 16, 2023. All the Parties' respective briefs have been submitted and Defendant Dr. Amin's Motion is ripe for ruling. Defendant Dr. Amin moves to dismiss Plaintiff's *Bivens* claim against him, at Count 4, and all state law claims against him at Counts 10, 11, 12, 13, 14 and 20.

      **B.**    **Standard of Review**

For the sake of brevity, the Court incorporates by reference the standard of review set forth above. *See* discussion *supra* Section IV.B.

      **C.**    ***Bivens* Claims**

Defendant Dr. Amin moves to dismiss Plaintiff's claim against him under *Bivens*, at Count 4. (Doc. 86 at 4–10). With respect to Defendant Dr. Amin's Motion to Dismiss Plaintiff's Fifth Amendment *Bivens* claim against him, for the reasons discussed with respect to Defendant Paulk *supra* Section V.E.1., the Court finds that Plaintiff's Fifth Amendment *Bivens* claim presents a new context. However, at the next stage of the analysis, the Court makes different findings about the factors counselling hesitation before extending a *Bivens* remedy to Plaintiff's Fifth Amendment claim, although the conclusion is the same: the Court declines Plaintiff's invitation to extend *Bivens* to her new context.

First, the purpose of a *Bivens* remedy is to deter federal officials from committing constitutional violations, and that consideration is less acute when a private actor violates the Constitution. *Malesko*, 534 U.S. at 71 (citing *Meyer*, 510 U.S. at 474). The *Malesko* Court found cause for hesitation in similar circumstances. *Malesko* examined the issue of whether to extend a *Bivens* remedy for deliberate indifference to medical needs against a private prison corporation, acting pursuant to a contract with the Federal Bureau of Prisons. *Malesko*, 534 U.S. at 66–74. In *Malesko*, the Supreme Court declined to extend *Bivens* liability to a private prison corporation because, among other factors, judgments against those corporations would have little deterrent effect on federal officials. *Id.* at 70.

Here, Defendant Dr. Amin was a private physician affiliated with Irwin County Hospital who was referred patients by ICDC. (Doc. 80 ¶¶ 36, 91). A judgment against Defendant Dr. Amin, therefore, would have little deterrent effect on federal officials—officials who appear only to have approved the referrals to Defendant Dr. Amin after they had been made by ICDC staff. (*See Id.* ¶ 153) ("[ICE] approves and denies all non-emergency off-site

medical care requests for detained individuals"); (*Id.* ¶ 152) ("The IGA requires Irwin County to provide 'all medical treatment provided to federal detainees within the facility,' but Irwin County must seek approval from ICE for all requests for treatment to be provided outside the facility"). As a private physician, referred requests by officials at a privately run detention facility, which were only approved by federal officials after they were made, Defendant Dr. Amin is several steps further removed from federal officials than the Defendant in *Malesko*. A *Bivens* remedy against Defendant Dr. Amin, therefore, would be even less likely to have a deterrent effect on the conduct of federal officials contemplated by *Bivens* and its progeny. This diminished deterrent effect of a judgment against Defendant Dr. Amin on federal officials, therefore, counsels hesitation before extending *Bivens* to Plaintiff's Fifth Amendment claim against him.

Second, as noted, the availability of an alternative means of relief may alone counsel hesitation before extending a *Bivens* remedy. *See Abbasi*, 582 U.S. at 137. This can be the case either if Congress has fashioned a remedy, *Bush*, 462 U.S. at 379, or state law provides relief for a plaintiff's injury, *Minneci*, 565 U.S. at 120–21. Defendant Dr. Amin contends that the availability of alternative state law remedies counsels hesitation here. (Doc. 86 at 6). The Court agrees. There are alternative state law remedies which Plaintiff could use to pursue relief for the alleged unconstitutional conduct by Defendant Dr. Amin, as evidenced by the many state law claims Plaintiff asserts against Defendant Dr. Amin, Irwin County Hospital, and the Irwin County Detention Center Defendants. (*See* Doc. 80 ¶¶ 313–21, 323–33, 334–47, 348–58 & 359–69). As a result, the Court finds that the availability of alternative means of relief counsels hesitation before extending a *Bivens* remedy to Plaintiff's Fifth Amendment claim.

Because the Court has identified two factors which counsel hesitation before extending Plaintiff's proposed Fifth Amendment *Bivens* remedy to the deliberate indifference and punitive conditions of confinement context, the Court declines to authorize such an extension.[23] Accordingly, Defendant Dr. Amin's Motion to Dismiss Plaintiff's Fifth

---

[23] The Court notes that it cannot allow the seriousness alone of Plaintiff's allegations against Defendant Dr. Amin, which are grave indeed, in the Court's view, to distract the Court from the clear instruction of the Supreme Court, that it would nonetheless be inappropriate to extend *Bivens* to Plaintiff's claims against Defendant Dr. Amin.

Amendment *Bivens* claim against him, at Count 4, is **GRANTED**. Therefore, that claim is **DISMISSED-WITH-PREJUDICE**.[24]

### D.    State Law Claims

Defendant Dr. Amin moves to dismiss Plaintiff's state law claims against him at Counts 10, 11, 12, 13, 14 and 20. (Doc. 86 at 13–20). Although Defendant Dr. Amin argues that Plaintiff fails to state a claim for each of her state law claims, the Court need not reach that issue, because it declines to exercise supplemental jurisdiction over Plaintiff's state law claims. As described in depth *supra* Section IV.F. the Court may decline to exercise supplemental jurisdiction, and should consider "judicial economy, fairness, and comity" when considering whether to do so. *See Rowe*, 279 F.3d at 1288.

Here, the Court has granted Defendant Dr. Amin's Motion to Dismiss the federal claim against him. Considering judicial economy, fairness, and comity, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against Defendant Dr. Amin. As such, the Court makes no determination as to the merits of those state law claims. Accordingly, Plaintiff's state-law claims, at Counts 10, 11, 12, 13, 14, and 20 against Defendant Dr. Amin are **DISMISSED-WITHOUT-PREJUDICE**. Defendant Dr. Amin's Motion to Dismiss Plaintiff's state law claims is, therefore, **DENIED**, on the grounds asserted, as moot.

### E.    Conclusion

Defendant Dr. Amin's Motion to Dismiss (Doc. 86) is **GRANTED-IN-PART** and **DENIED-AS-MOOT-IN-PART**. Plaintiff's federal claim against Defendant Dr. Amin at Count 4, is **DISMISSED-WITH-PREJUDICE**. Because the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against Defendant Dr. Amin, at Counts 10, 11, 12, 13, 14, and 20 those claims are **DISMISSED-WITHOUT-PREJUDICE**. Therefore, no claims remain in the above captioned action against Defendant Dr. Amin. As a result, Mahendra Amin, in both his individual and official capacities, is **DISMISSED** as a Party from the action.

---

[24] Because the Court has found that it will not authorize a *Bivens* remedy for Plaintiff's claims against Defendant Dr. Amin, it need not address his argument that he was not acting under color of federal law.

## VII.    IRWIN COUNTY HOSPITAL'S MOTION TO DISMISS

### A.    Procedural History

On May 29, 2023, Defendant Irwin County Hospital filed a Motion to Dismiss and Motion to Strike (Doc. 83). Plaintiff filed a Response (Doc. 88) on April 19, 2023, and Defendant Irwin County Hospital filed a Reply (Doc. 94) on May 3, 2023. All the Parties' respective briefs have been submitted and the motion is ripe for ruling. In its Motion to Dismiss, Defendant Irwin County Hospital asserts a number of grounds for dismissal of Plaintiff's claims against it. Most relevant to this Order, is Defendant Irwin County Hospital's request for the Court to decline to exercise supplemental jurisdiction over Plaintiff's state law claims against it at Counts 9, 10, 11, 12, 13, 14, and 20. (Doc. 83 at 3).

### B.    Supplemental Jurisdiction

As described in depth *supra* Section IV.F., the Court may decline to exercise supplemental jurisdiction, and should consider "judicial economy, fairness, and comity" when considering whether to do so. *See Rowe*, 279 F.3d at 1288. The Court finds here that judicial economy, fairness, and comity would be served by declining to exercise supplemental jurisdiction over Plaintiff's state law claims against Defendant Irwin County Hospital, given that no federal claims are alleged against it, and nearly all of the federal claims against other Defendants have been dismissed in this Order. As a result, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against Defendant Irwin County Hospital. Accordingly, its Motion (Doc. 83) for the Court to decline to exercise supplemental jurisdiction over Plaintiff's state law claims against it is **GRANTED**. Plaintiff's state law claims against Defendant Irwin County Hospital, at Counts 9, 10, 11, 12, 13, 14, and 20 are **DISMISSED-WITHOUT-PREJUDICE**. As a result, Defendant Irwin County Hospital's Motion to Dismiss Plaintiff's state law claims on other grounds is **DENIED**, on the grounds asserted, as moot. Therefore, no claims remain in the above-captioned action against Defendant Irwin County Hospital; as a result, Hospital Authority of Irwin County is hereby **DISMISSED** as a party to the action.

### C.    Motion to Strike

Defendant Irwin County Hospital moves the Court to strike portions of Plaintiff's Complaint. (Doc. 83 at 4–5). However, because the Court has dismissed Defendant Irwin County Hospital from the action, its Motion to Strike is **DENIED-AS-MOOT.**

## VIII.  CONCLUSION

For the reasons discussed above, the Defendants' Motions to Dismiss (Docs. 83, 84, 85, 86 and 100) are **GRANTED-IN-PART**, **DENIED-IN-PART**, and **DENIED-AS-MOOT-IN-PART**. The dispositions of these Defendants' motions are as follows:

(1) The Official Capacity Federal Defendants' Motion to Dismiss (Doc. 100) is **GRANTED-IN-PART** and **DENIED-IN-PART**. Plaintiff's claims at Counts 2, 5, 6, and 7 are **DISMISSED-WITH-PREJUDICE**. The only claims that remain against the Official Capacity Federal Defendants are Plaintiff's FTCA claims against the United States at Counts 15–19. As a result, Defendants Immigration and Customs Enforcement; and Francisco Madrigal, Patrick Lechleitner, Alejandro Mayorkas, Merrick Garland, Patrick Musante, Cesar Ciprian, and Ada Rivera in their official capacities are **DISMISSED** as Parties from the action.

(2) The ICDC Entity Defendants' Motion to Dismiss (Doc. 84) is **GRANTED-IN-PART**, **DENIED-IN-PART**, and **DENIED-AS-MOOT-IN-PART**. Plaintiff's federal claims against the ICDC Entity Defendants at Counts 1, 3, and 4 are **DISMISSED-WITH-PREJUDICE**. Because the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against the ICDC Entity Defendants, at Counts 8, 9, 10, 12, 14 and 20, those claims are **DISMISSED-WITHOUT-PREJUDICE**. Therefore, no claims remain in the above-captioned action against the ICDC Entity Defendants. As a result, Irwin County Detention Center and LaSalle Southeast, LLC are hereby **DISMISSED** as Parties from the action.

(3) Defendant Paulk's Motion to Dismiss (Doc. 85) is **GRANTED-IN-PART**, and **DENIED-AS-MOOT-IN-PART**. All federal claims against him in his individual and official capacities at Counts 1, 3, and 4, are **DISMISSED-WITH-PREJUDICE**. Because the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against Defendant Paulk in his individual and official capacities, at Counts 8, 9, 10, 12, 14, and 20,

those claims are **DISMISSED-WITHOUT-PREJUDICE**. Therefore, no claims remain in the above-captioned action against Defendant Paulk. As a result, David Paulk in his individual and official capacities is hereby **DISMISSED** as a Party from the action.

(4) Defendant Dr. Amin's Motion to Dismiss (Doc. 86) is **GRANTED-IN-PART** and **DENIED-AS-MOOT-IN-PART**. Plaintiff's federal claim against Defendant Dr. Amin at Count 4, is **DISMISSED-WITH-PREJUDICE**. Because the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against Defendant Dr. Amin, at Counts 10, 11, 12, 13, 14, and 20 those claims are **DISMISSED-WITHOUT-PREJUDICE**. Therefore, no claims remain in the above captioned action against Defendant Dr. Amin. As a result, Mahendra Amin, in both his individual and official capacities, is **DISMISSED** as a Party from the action.

(5) Defendant Irwin County Hospital's Motion to Dismiss and Motion to Strike (Doc. 83) is **GRANTED-IN-PART** and **DENIED-AS-MOOT-IN-PART**. Plaintiff's state law claims against Defendant Irwin County Hospital, at Counts 9, 10, 11, 12, 13, 14, and 20 are **DISMISSED-WITHOUT-PREJUDICE**. As a result, Defendant Irwin County Hospital's Motion to Dismiss Plaintiff's state law claims on other grounds is **DENIED**, on the grounds asserted, as moot. Therefore, no claims remain in the above-captioned action against Defendant Irwin County Hospital; as a result, Hospital Authority of Irwin County is hereby **DISMISSED** as a Party to the action.

Moreover, the following Defendants, are **DISMISSED-WITHOUT-PREJUDICE** from the action for Plaintiff's failure to perfect service: Mia Mines, in her official capacity, William Rabiou, in his official capacity, Marteka George, in her individual and official capacities; "FNU Hughes," in her individual and official capacities; "FNU Smith," in her individual and official capacities; "FNU Coney," in her individual and official capacities; "FNU Hanes," in his individual and official capacities, "FNU Faison," in her individual and official capacities; "FNU Battle," in her individual and official capacities; "FNU Vaughn," in her individual and official capacities; "FNU Scott," in her individual and official capacities; "FNU Slack," in her individual and official capacities; "Unknown ICDC Officers ##1-X," in their individual and official capacities; and "Unknown ICE Officials ##1-X," in their individual and official capacities.

In sum, the only claims that remain in the action, upon entry of this Order, are the FTCA claims against the United States of America at Counts, 15–19.

**SO ORDERED**, this 26th day of March 2024.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**